UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

NATIONWIDE INSURANCE COMPANY,

        Plaintiff,

      v.

JEANNE HENTZ, CENTRAL LABORERS
PENSION FUND, CENTRAL LABORERS
WELFARE FUND and CENTRAL
LABORERS ANNUITY FUND,

        Defendants.

Case No. 11-cv-618-JPG-PMF

## MEMORANDUM AND ORDER

This matter comes before the Court on the parties' cross motions for summary judgment in this declaratory judgment action regarding the scope of a homeowner's insurance policy issued to defendant Jeanne Hentz by plaintiff Nationwide Insurance Company ("Nationwide"). Defendants Central Laborers Pension Fund, Central Laborers Welfare Fund and Central Laborers Annuity Fund (collectively, "Central Laborers") filed a motion for summary judgment (Doc. 8), to which Nationwide has responded (Doc. 34). Nationwide has filed its own summary judgment motion (Doc. 23), to which Central Laborers has responded (Doc. 30), to which Nationwide has, in turn, replied (Doc. 34). Hentz has not responded to either summary judgment motion.

## I.    Summary Judgment Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). Because the essential facts are not in dispute

in this case, the case will turn on whether either party can demonstrate it is entitled to judgment as a matter of law.

## II.     Facts and Procedural History

This matter arose after a CD-ROM and a portable laptop computer were stolen from Hentz's car on October 31, 2010.  The car was parked outsider her residence.  The CD-ROM contained the names of and other personal information concerning approximately 30,000 participants and beneficiaries of Central Laborers' funds.  Following the theft, Central Laborers notified the individuals whose information was on the stolen CD-ROM and contracted for credit monitoring services and insurance.  The cost to Central Laborers for these measures was approximately $200,000.

Hentz, an accountant, originally came to possess the CD-ROM because she was employed by an accounting and auditing firm ("Firm") that Central Laborers had retained to perform accounting and auditing services.  After the CD-ROM was stolen from Hentz's car, Central Laborers sued Hentz in state court to recover the costs it incurred in response to the theft.  *See Central Laborers Pension Fund v. Hentz*, No. 2011-L-12 (Ill. Cir. Ct. Morgan County).  The state law suit advances negligence and breach of contract causes of action.  With respect to the negligence claim, Central Laborers alleges Hentz failed to exercise reasonable care to protect Central Laborers' CD-ROM and the data on it by failing to secure it adequately from theft.  The breach of contract claim asserts that the Firm had contracted with Central Laborers to ensure the Firm's employees would protect the personal information given to it, that Hentz had agreed with the Firm to protect that information, and that by taking possession of the CD-ROM Hentz had entered into an implied contract with Central Laborers to protect the information.

Hentz tendered the defense of the state law suit to Nationwide, which had written her

2

homeowner's insurance policy (HOA 0028898726-0; "Policy") that covered the date of the theft. Essentially, the Policy covers property damage but contains exclusions for property damage in connection with a business, under a contract by the insured, or to property in the care of the insured. The specific language of the Policy with respect to each of these areas will be set out in more detail in the Court's discussion of those provisions.

Nationwide refused to defend and indemnify Hentz and instead brought this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration that the Policy does not cover the October 31, 2010, loss of Central Laborers' data and resulting damages and that, as a consequence, it is not obligated to defend or indemnify Hentz. It believes there was no property damage as that term is defined in the Policy and that all three of the foregoing exclusions apply. Central Laborers, of course, disagrees.

**III.    Analysis**

Under Illinois law, which all parties agree applies to this action, the interpretation of an insurance policy, even an ambiguous policy, is a question of law, and questions of coverage are therefore appropriate for summary judgment. *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) (citing *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 818-19 (7th Cir. 2008)); *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993). The *BASF* court succinctly explained:

> A court's primary objective in construing the language of an insurance policy is to ascertain and give effect to the intentions of the parties as expressed by the language of the policy. In performing that task, the court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. Where the terms of an insurance policy are clear and unambiguous, they must be applied as written; but where ambiguity exists, the terms will be strictly construed against the drafter. Policy terms are ambiguous if they are reasonably susceptible to more than one interpretation, not simply if the parties can suggest creative possibilities for their

3

meaning, and a court will not search for ambiguity where there is none.

*BASF*, 522 F.3d at 819 (citations and quotation marks omitted);  *accord Twenhafel*, 581 F.3d at 628.

Under Illinois law, an insurer can owe two distinct duties to an insured:  "(1) the duty to defend him if a claim is made against him; and (2) the duty to indemnify him if he is found legally liable for the occurrence of a covered risk."  *Chandler v. Doherty*, 702 N.E.2d 634, 637 (Ill. App. Ct. 1998).  The duty to defend is broader than the duty to indemnify.  *BASF*, 522 F.3d at 819 (citing *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005)).  If an insured owes no duty to defend a lawsuit, it cannot have a duty to indemnify an award from that lawsuit.  *Crum & Forster*, 620 N.E.2d at 1081 ("Clearly, where there is no duty to defend, there will be no duty to indemnify. . . .").  The Court begins by examining the broader duty to defend.

A.   <u>Duty to Defend</u>

Under Illinois law, an insurer has an obligation to defend its insured in an underlying lawsuit if the complaint in the underlying lawsuit alleges facts potentially within the coverage of the insurance policy, even if the allegations are groundless, false or fraudulent.  *BASF AG v. Great Am. Assur. Co.*, 522 F.3d 813, 819 (7th Cir. 2008) (citing *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314-15 (Ill. 2006);  *General Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005)).  To determine if the underlying suit alleges a situation potentially within the insurance coverage, the Court compares the allegations of the complaint to the relevant provisions of the insurance policy, being sure to liberally construe the allegations in favor of the insured.  *BASF*, 522 F.3d at 819 (citing *Valley Forge*, 860 N.E.2d at 314);  *General Agents*, 828 N.E.2d at 1098.  If any theory of recovery in

the underlying complaint falls within the insurance coverage, the insurer will have a duty to defend. *BASF*, 522 F.3d at 819 (citing *Valley Forge*, 860 N.E.2d at 315; *General Agents*, 828 N.E.2d at 1098). The threshold showing to trigger the duty to defend is minimal, and doubts about coverage must be resolved in favor of the insured. *Viking Constr. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 6 (Ill. App. Ct. 2005).

       1.    <u>Property Damage</u>

The parties disagree about whether the loss alleged in the underlying lawsuit – the theft of a CD-ROM and the data recorded thereon– is "property damage." The Policy states, "'Property damage' means physical injury to, destruction of, or loss of use of tangible property." Policy, Definitions ¶ B.9. It further provides that Nationwide will indemnify to the limit of liability and provide a defense "[i]f a . . . suit is brought against an 'insured' for damages because of . . . 'property damage' caused by an 'occurrence' to which this coverage applies." Policy, § II, ¶ A. No party disputes that the theft constitutes an "occurrence" under the Policy.

Central Laborers argues that Hentz's physical loss of the CD-ROM is "property damage" because she has suffered the "loss of use of tangible property." It argues that the Policy should therefore cover the intangible consequential damages caused by that loss, including Central Laborers' notification, credit monitoring and insurance costs.

Nationwide, on the other hand, argues that the loss of the data on the CD-ROM, the root of Central Laborers' damages, is an intangible loss and does not fall within the Policy's definition of "property damage." In support of its position that Central Laborers' losses were purely intangible economic losses not covered by the Policy, it cites *CMO Graphics, Inc. v. CNA Insurance*, 450 N.E.2d 860, 863-64 (Ill. App. Ct. 1983) (holding that damages paid by insured to its client for producing defective advertising artwork was not a loss to tangible property covered

5

by insurance policy but was instead purely economic loss), *First National Bank of Springfield v. Department of Revenue*, 421 N.E.2d 175, 178-79 (Ill 1981) (holding that sale of computer software programs on magnetic tapes was not transfer of "tangible personal property" for tax purposes), and *America Online, Inc. v. St. Paul Mercury Ins. Co. ("AOL")*, 347 F.3d 89, 95-96 (4th Cir. 2003) (holding that physical medium on which data are stored is tangible property but that stored data are intangible).  It further argues that there was no "physical damage" to any property and that Central Laborers did not suffer any "loss of use" of any physical component and, indeed, still has the data on the CD-ROM that was stolen, albeit not from that source.

As a preliminary matter, the Court is not persuaded by *First National Bank*, a tax case, that data and the medium on which they are recorded should both be treated as "intangible" in the insurance context.  Tax and insurance laws have different concerns.  In the tax context, which focuses on the value of property, the value of the data often exceeds the value of the medium on which it is recorded.  However, in the insurance context, relative value is subordinate to the coverage as described in an insurance policy.  Even an item of very little value – say a blank compact disc – can be covered if the policy so provides.  Thus, the Court is unpersuaded by *First National Bank* that data-recording media can never be "tangible property."  The Court now turns to "property damages" as defined by the Policy in this case.

It is true that courts generally do not consider intangible losses to be "property damage." *Viking Const. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 6-7 (Ill. App. Ct. 2005);  *see also Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, No. 1-10-1723, 2011 WL 6382063, at *7-*8 (Ill. App. Ct. Dec. 16, 2011).  Indeed, in this case loss of use of purely intangible property is excluded from the Policy's definition of "property damage," which is expressly limited to injury, destruction or loss of use *of tangible property*.  Furthermore, neither

6

party contends that the loss of data alone is a loss of tangible property, although there is some debate as to this proposition. *See* 9 *Couch on Insurance*, § 126:40 (3d ed.). The Court need not tackle that question now and will assume for the purposes of the pending motion that the loss of data does not constitute a loss of use of tangible property. Thus, Nationwide is right that, had someone hacked into Hentz's computer and erased the data about Central Laborers' participants and beneficiaries or stolen the data without also stealing the medium on which they were recorded, Hentz would have suffered no property damage and the Policy would provide no coverage. But that is not what is alleged to have happened. In this case, the medium on which the data were stored – the CD-ROM – was stolen. *AOL* makes clear that the medium on which data are stored constitutes "tangible property," *AOL*, 347 F.3d at 95, and Hentz clearly suffered a "loss of use" of that "tangible property" when it was stolen from her car. Thus, she suffered "property damage" under the Policy.

It is also possible under the allegations in the underlying lawsuit that Central Laborers' damages will be found to be "because of" that "property damage." In arguing that Central Laborers suffered no property damage, Nationwide confuses the Policy's requirement about who must suffer the loss of use "property damage" before coverage kicks in. The Policy provides simply that Nationwide will provide a defense if a suit is filed against Hentz "*for damages because of . . . 'property damage.'*. . . ." Policy, § II, ¶ A (emphasis added). The Policy places no limits on the type of damages sought in the underlying suit. Consequently, even an underlying suit for intangible, economic damages may trigger coverage so long as it results from covered property damage. *See Wausau Underwriters Ins. Co. v. United Plastics Grp.*, 512 F.3d 953, 958 (7th Cir. 2008) (underlying plaintiff's business losses were consequential damages payable under policy as damages "because of property damage"); *see, generally, Universal*

7

*Underwriters*, 2011 WL 6382063, at *8-*11 (insurer owed duty to defend in underlying spoliation of evidence suit because spoliation damages, although intangible, were consequential damages flowing from destruction and loss of use of covered tangible property) (citing *United Fire & Cas. Co. v. Keeley & Sons, Inc.*, 887 N.E.2d 911 (Ill. App. Ct. 2008)).

In contrast, the policy at issue in *AOL* limited the insurer's liability for consequential damages to property that is physically damaged. *AOL*, 347 F.3d at 98. There, the court found the consequential damages to the underlying plaintiffs' computer operations because of the insured's faulty software did not fall into this category. *Id.* It noted, however,

> Without the limitation . . . .St. Paul would have been asked to defend claims, for example, that because the computer was rendered defective because of the faulty [software], the store could not operate its computers, and because the store could not operate its computers, it had to close, causing loss of use of the premises and the business.

*Id.* Central Laborers brings analogous claims for damages in its underlying suit.

The underlying suit by Central Laborers sues for damages because of Hentz's "property damage." Therefore, the duty to defend kicks in. Whether Central Laborers' damages are actually "because of" the loss of use of the CD-ROM is a question that would have been answered later in the context of Nationwide's duty to indemnify had a coverage exclusion not relieved Nationwide of its duty to defend. The Court now turns to that exclusion.

2.   Property In Care of Insured

Nationwide believes the Policy does not cover Hentz's "property damage" because it falls under the exclusion for "'[p]roperty damage' to property . . . in the care of the 'insured'." Policy, § II, ¶ F.3. This exclusion falls into the general category of common liability insurance exclusions for property within the care, custody and control of the insured. *See, e.g., Bolanowski v. McKinney*, 581 N.E.2d 345, 346 (Ill. App. Ct. 1991); *Country Mut. Ins. Co. v. Waldman*

8

*Mercantile Co., Inc.*, 430 N.E.2d 606, 608 (Ill. App. Ct. 1981).  The intent of such exclusions is to prevent general liability insurance, which "is designed to indemnify the insured from liability to third persons resulting from the breach of some duty by the insured," *Country Mut.*, 430 N.E.2d at 609, "'from becoming tantamount to property insurance when property is . . . in the custody and control of a named insured and therefore subject to damage or loss due to the named insured's own acts or omissions." *Factory Mut. Ins. Co. v. Liberty Mut. Ins. Co.*, 518 F. Supp. 2d 803, 810 (W.D. Va. 2007) (quoting Eric Mills Holmes, *Appleman on Insurance 2d* § 132.9[B] (2002)).  For the "in the care of" exclusion to apply, the damaged property must be within the exclusive "possessory control of the insured at the time of the loss." *Country Mut.*, 430 N.E.2d at 609.  "It is the burden of the insurer to affirmatively prove that an exclusion in an insurance policy applies." *United Nat'l Ins. Co. v. Faure Bros. Corp.*, 949 N.E.2d 1185, 1191 (Ill. App. Ct.), *app. denied*, No. 112658 (Ill. Nov. 30, 2011).

Central Laborers argues that the underlying state law complaint alleged only that Hentz came into the possession of the CD-ROM and that it was in her car parked outside her residence, not necessarily on her property.  Central Laborers contends these allegations are insufficient to show Hentz had possessory control over the CD-ROM at the time it was stolen.  Therefore, Central Laborers argues, the underlying suit potentially comes within the Policy's coverage. Nationwide contends the underlying suit alleges Hentz had possessory control over the CD-ROM by virtue of it being in her vehicle, a place from which she had the power to move it at any time.

The complaint in the underlying lawsuit alleges Hentz came into possession of the CD-ROM, stored it in a portable laptop computer, transported the computer in her car and parked the car in the open at her residence (although not necessarily on the premises of her residence) while

the computer and CD-ROM were still inside.  The complaint alleges the computer and CD-ROM were stolen from Hentz's car.  It is true that Central Laborers does not allege in the underlying complaint that the car was actually parked on Hentz's property or that Hentz had knowledge that the CD-ROM was in the car.  However, the exact location of the car and Hentz's knowledge are not relevant.  The complaint clearly alleges she possessed the CD-ROM.  Furthermore, the CD-ROM was in her car, over which she had care and control as demonstrated by her ability to drive and park it.  That is sufficient to establish the CD-ROM was in her care.  Accordingly, the exclusion for coverage for property damage to property in the care of the insured applies, and Nationwide owes no duty to defend Hentz in Central Laborers' underlying lawsuit.

In light of the Court's conclusion that the "in the care of the insured" exclusion applies, it need not address whether the exclusions for property damage in connection with a business or under a contract by the insured also apply.

B.    <u>Duty to Indemnify</u>

In light of the fact that Nationwide owes no duty to defend Hentz against Central Laborers' suit, the broader of its two potential duties under the Policy, it can owe no duty to indemnify her for liability stemming from that suit.  *See Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 620 N.E.2d 1073, 1081 (Ill. 1993).

**IV.    Conclusion**

For the foregoing reasons, the Court:

• **DENIES** Central Laborers' motion for summary judgment (Doc. 8);

• **GRANTS** Nationwide's motion for summary judgment (Doc. 23); and

• **DIRECTS** the Clerk of Court to enter judgment accordingly and declaring:

Homeowner's insurance policy numbered HOA 0028898726-0 issued by plaintiff

Nationwide Insurance Company to defendant Jeanne Hentz does not afford coverage to the defendant Jeanne Hentz for theft of a CD-ROM from her automobile alleged to have occurred on October 31, 2010, which forms the basis of *Central Laborers Pension Fund v. Hentz*, No. 2011-L-12, in the Circuit Court of the Seventh Judicial Circuit, Morgan County, Illinois;

Plaintiff Nationwide Insurance Company owes no duty to defend defendant Jeanne Hentz against any of the allegations in the complaint in *Central Laborers Pension Fund v. Hentz*, No. 2011-L-12, in the Circuit Court of the Seventh Judicial Circuit, Morgan County, Illinois; and

Plaintiff Nationwide Insurance Company owes no duty to indemnify defendant Jeanne Hentz for any judgment entered against her in *Central Laborers Pension Fund v. Hentz*, No. 2011-L-12, in the Circuit Court of the Seventh Judicial Circuit, Morgan County, Illinois, or for any agreement entered into in settlement of that case.

**IT IS SO ORDERED.**
**DATED:  March 6, 2012**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

11